DEPARTMENT OF REVENUE, Appellant, v. WISCONSIN TELEPHONE COMPANY, Respondent.

*No. 690 (1974). Argued March 1, 1976.—Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 411.)

For the appellant the cause was argued by *Allan P. Hubbard,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the respondent there was a brief by *Theodore C. Bolliger, Kenneth E. Millard,* and *Foley & Lardner,* and oral argument by *Marvin E. Klitsner,* all of Milwaukee.

ROBERT W. HANSEN, J. Is Wisconsin Telephone entitled to change its method of treating amounts received from Western Electric for purposes of computing depreciation expense deductions allowable under the Wisconsin corporate franchise tax law?

In the years in question, 1966 through 1969, Wisconsin Telephone determined the cost of the items purchased from Western Electric by subtracting the amount received from Western Electric (representing tax savings by consolidation for tax treatment) from the initially recorded book cost of the items. Wisconsin Telephone now seeks to use the initially recorded book cost as the basis, and credit the amount received from Western Electric to a reserve for deferred federal income taxes. The revenue department denied the Wisconsin Telephone claim for refund, asserting the telephone company cannot make such change for tax purposes.

Both parties agree that depreciation is to be calculated on the basis of "cost," more particularly the "Wisconsin income tax cost" of the property involved.[1] The primary argument of the revenue department is not that the proposed method of calculating depreciation is improper, but rather that the Wisconsin Telephone Company cannot treat its accounts one way for regulatory purposes and another way for tax purposes. The department sees its position as mandated by a recent case, *Milwaukee*

---

[1] *See:* Sec. 71.04 (13 ) (g), Stats. 1969. *See also:* Sec. 71.03 (1) (g), Stats. 1969.

*Gas Light Co. v. Dept. of Taxation.*[2] There the public utility involved was subject to the regulatory jurisdiction of the state public service commission as to its income, depreciation charges, accounting and rates charged. In 1940, the PSC had ordered straight-line depreciation rates. Beginning in 1954, the utility, for federal income tax purposes, depreciated its income-producing property under the sum-of-the-digits method. In 1956, the utility filed an application with the PSC seeking an order as to how to treat the income tax savings under the new method of computing depreciation.

The PSC authorized the utility to include certain amounts as depreciation. The tax department disallowed such basis for computation of depreciation for tax purposes. Our court allowed the utility to follow the procedure for tax purposes that had been established by the PSC for regulatory purposes. Finding the amount of a depreciation charge "one peculiarly within the province of the PSC," our court held that: "[A]ny amounts which PSC properly orders to be deducted as a depreciation expense and which it orders to be included in a utility's depreciation reserve, are ordinary and necessary business expenses of such utility."[3] The revenue department sees this case as establishing that the method of treating depreciation as approved by the FCC and PSC, must be followed by Wisconsin Telephone for all purposes, tax purposes included.

There is an obvious difference between the *Milwaukee Gas Light Case* and the case now before us. In *Milwaukee Gas Light*, the PSC had ordered the utility to use a specific method of accounting and no other.[4] Here, as

---

[2] (1964), 23 Wis. 2d 195, 127 N. W. 2d 64.

[3] *Id.* at pages 201, 202.

[4] *Id.* at page 205, this court holding: "What is controlling is how the PSC requires the utility to handle the deduction on its books."

the circuit judge on review pointed out, there is ". . . only a requirement by the F. C. C. (with no indication of an independent affirmative requirement imposed by the P. S. C.) that it approve a change between two equally acceptable alternative bookkeeping methods." With two alternative methods of accounting here found reasonable and usable, we find no requirement, either judicial or legislative, that only one method of accounting is appropriate for any purposes, tax purposes included.[5]

The revenue department puts a second arrow to its bow, arguing that, depreciation in this state being based on cost, the actual cost of the items involved is book cost minus the amount received from Western Electric and distributed by AT&T. This latter amount, the department contends, should be considered to be a "rebate" for tax purposes. The logic behind this contention is that Western Electric benefited from the consolidation (for tax purposes) by not declaring a profit on sales to other members of the group, and such profits were also eliminated from the basis of the assets purchased by other members, thus reducing depreciation and increasing federal income taxes. Therefore, the department concludes, with Western Electric required to make cash payments to operating companies to reimburse them for added federal taxes due to reduced depreciation, the cost basis of the depreciable assets were reduced by such payments.[6]

[5] In certain instances the legislature has expressly recognized that treatment for regulatory purposes and tax purposes may be different. See, e.g., sec. 71.04 (8), Stats. 1969.

[6] Appellant's Brief, page 11, the contention stated to be: "Therefore, under the Internal Revenue Code, Western Electric was required to make cash payments to the operating companies from its federal income tax savings to reimburse the operating companies for the additional federal tax it would cost them through reduced depreciation over the useful life of the assets purchased. Wisconsin Telephone Company elected, and the Wisconsin Public Service Commission recognized for rate making purposes, that

However, in finding this method of computation one of two reasonable under the circumstances, the FCC said of it: "The other method commonly used is for the operating telephone company to credit a reserve for deferred taxes with the amount of the taxes deferred and to amortize such amount to operating taxes over the estimated life of the plant which amount offsets the annual increase in income tax expense." Respondent argues that immediate tax savings to Western Electric here result in higher taxes paid by Wisconsin Telephone spread over the life of the asset. Regardless of that, we do not see the result as properly described as a "rebate." The payments under this method of accounting are only indirectly related to the assets involved. Whatever imperfections there may be as to either of the two methods of accounting approved for regulatory purposes by the FCC, we do not see the word "rebate" as appropriately applied to any aspect of either of the two methods of accounting authorized. A "rebate" has been defined as: "A deduction or drawback from a stipulated payment, charge, or rate, . . . not taken out in advance of payment, but handed back to the payer after he has paid the full stipulated sum."[7] We do not see any aspect of the situation here before us to fall into that or any other definition of the word "rebate."

The revenue department seeks to put a third arrow to its bow, claiming that, if the payments made are not to be taxed as denied claims for depreciation, they should be taxed as income in the year of receipt. Such claim of right to offset was not raised before the tax appeals commission nor before the circuit court. It is raised for

the cost basis of the depreciable assets were reduced by such payments from Western Electric, thereby reducing the amount invested in utility property for rate making purposes and reducing the amount of depreciation expense in determining net income over the useful life of such assets."

[7] Black's, *Law Dictionary* (4th ed. 1968), at page 1432.

the first time on the appeal to this court. Ordinarily our court does not consider issues raised on appeal for the first time.[8] This is certainly the rule for a claim in the nature of a setoff or recoupment.[9] Nonetheless, the revenue department contends that we could and should reach the issue that is here belatedly raised. We agree that we could, but do not agree that we should. In presenting its case to the tax appeals commission and to circuit courts for review, the department has the advice and counsel of a full crew of staff members and attorneys skilled and experienced in matters of tax law. There is no reason or excuse for issues, later felt to be material and important, not being presented at the tax appeals commission and reviewing court levels. It is true that the telephone company here hardly qualifies as a David confronting a Goliath. It has its own resources of tax experts and legal counselors able to develop a position and defend it in court. However, the next time around, it may well be an individual taxpayer or small businessman who has elected to challenge a tax department ruling or is compelled to dispute a denial of claim for refund by the state revenue department. We see both equity and propriety served by requiring the tax or revenue department, on an appeal to this court, to stay within the issues it has raised and argued before the tax appeals commission and in the circuit court. The contention as to taxability of these payments as income, raised for the first

[8] *See: Culligan, Inc. v. Rheaume* (1954), 268 Wis. 298, 310, 67 N. W. 2d 279, this court stating: "Ordinarily this court will not consider assignments of error as to issues which have not been presented to the trial court."

[9] *See:* 4 C. J. S., *Appeal and Error* (1957), p. 705, sec. 237, commenting: "A set-off or counterclaim or a claim in recoupment or reconvention cannot be set up or relied upon on appeal where it was not pleaded or otherwise urged in the court below. . . ." *See also: Cappon v. O'Day* (1917), 165 Wis. 486, 490, 162 N. W. 655.

time on this appeal to this court, will not be discussed or reached.

The judgment of the circuit court affirming the order of the tax appeals commission is affirmed. We agree with both the appeals commission and reviewing court that the respondent here had the right to compute its income and deductions for franchise tax purposes under the method of accounting it used, and that the respondent was entitled to have its claim for refund for the years 1966 to 1969, inclusive, allowed by the revenue department.

*By the Court.*—Judgment affirmed.

HANLEY, J., took no part.