Shannon PRESTON, Plaintiff-Appellant,†

Charles JOHNSON and Estate of Bridon M. Johnson, Plaintiffs,

v.

MERITER HOSPITAL, INC. and Wisconsin Patients Compensation Fund, Defendants-Respondents.

Court of Appeals

*No. 03–1376. Submitted on briefs December 5, 2003.—Decided February 26, 2004.*

2004 WI App 61

(Also reported in 678 N.W.2d 347.)

† Petition to review filed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James Bopp, Jr.* and *Thomas J. Marzen* of *National Legal Center for the Medically Dependent & Disabled, Inc.*, Terre Haute, Indiana; and *Dennis E. Robertson* of *Rumf Law Office*, Cambridge.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Curtis S. Swanson* and *David J. Pliner* of *Corneille Law Group, L.L.C.*, Madison.

Before Deininger, P.J., Dykman and Vergeront, JJ.

¶ 1. DYKMAN, J. Shannon Preston appeals from a judgment dismissing her claims against Meriter Hospital, Inc. and The Wisconsin Patient's Compensation Fund (Meriter). She raises four issues on appeal. First, she asserts that the Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. § 1395dd(b)(1)(A) (2001),[1] required Meriter to stabilize her infant child, even though the hospital did not transfer the child to another hospital. Second, she contends that she stated a claim that Meriter violated the screening requirement in § 1395dd(a). Third, she claims that she did not need to provide expert testimony to establish her negligence claim. Fourth, she argues that Meriter owed her a duty of care that included obtaining her informed consent regarding treatment for her infant child. We affirm.

## BACKGROUND

¶ 2. The parties do not dispute the material facts of the case. Preston arrived at Meriter Hospital on November 9, 1999, twenty-three weeks pregnant. In Meriter's birth center, she delivered a child with a gestational age of approximately twenty-three and 2/7th's weeks. The child weighed one-and-a-half pounds at birth and could not survive without resuscitation and

---

[1] All citations to § 1395dd and its subsections refer to 42 U.S.C. § 1395dd (2001).

726

long-term intensive care. Except for nursing care, Meriter did not resuscitate or treat the child, who survived for two-and-a-half hours.

¶ 3. Preston sued Meriter for: (1) medical negligence; (2) failing to obtain informed consent; (3) violating EMTALA, § 1395dd; and (4) neglect of a patient in violation of Wis. Stat. § 940.295(j)1 (2001–02).[2] Meriter moved for summary judgment on all the claims.

¶ 4. For the medical negligence claim, Meriter asserted that Preston failed to identify any expert medical witness to proffer an opinion either as to the standard of care or as to causation. The trial court determined Meriter had established a *prima facie* defense and found that Preston had not offered any evidence to refute Meriter's contention.

¶ 5. As to the informed consent claim, Meriter asserted that doctors, and not hospitals, are required to obtain informed consent. The trial court determined that Meriter had established a *prima facie* defense to Preston's informed consent claim. It found that Preston did not refute this argument and deemed it admitted.

¶ 6. With regard to EMTALA, the trial court found that Preston's "complaint focuses on the hospital's failure to treat/resuscitate" the child. It determined that this allegation "appears to implicate EMTALA's stabilization requirement and not the screening requirement." It then concluded that the stabilization requirement in § 1395dd(b)(1)(A) applies only to instances where a hospital transfers a patient. The court held that Meriter was not liable under EMTALA because neither Preston nor her child were

---

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

727

transferred from the hospital. It was guided by the reasoning of *Harry v. Marchant*, 291 F.3d 767 (11th Cir. 2002).

¶ 7. The trial court also concluded EMTALA did not apply to the child because the child was an inpatient. It adopted the reasoning in *Bryant v. Adventist Health System/West*, 289 F.3d 1162, 1169 (9th Cir. 2002), where the court found that EMTALA does not apply to inpatients unless the patient establishes that the hospital admitted the patient as a subterfuge, without any intention of treating the patient, and then discharged the patient without satisfying the stabilization requirement. It concluded that Preston had not refuted Meriter's contention that the child was an inpatient at the hospital, nor had Preston alleged any subterfuge by Meriter.

¶ 8. Preston appeals from the trial court's granting of summary judgment on these three claims. She does not, however, appeal the dismissal of her WIS. STAT. § 940.295 claim.

## STANDARD OF REVIEW

¶ 9. We review de novo a trial court's decision on a motion for summary judgment, applying the same standard as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate if there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).

¶ 10. Our method for reviewing summary judgment is well developed:

> If the pleadings state a claim and demonstrate the existence of factual issues, a court considers the moving

728

party's proof to determine whether the moving party has made a prima facie case for summary judgment. If the defendant is the moving party the defendant must establish a defense that defeats the plaintiff's cause of action. If a moving party has made a prima facie defense, the opposing party must show, by affidavit or other proof, the existence of disputed material facts or undisputed material facts from which reasonable alternative inferences may be drawn that are sufficient to entitle the opposing party to a trial.

The inferences to be drawn from the underlying facts contained in the moving party's material should be viewed in the light most favorable to the party opposing the motion, and doubts as to the existence of a genuine issue of material fact are resolved against the moving party. The court takes evidentiary facts in the record as true if not contradicted by opposing proof.

*Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 22–23, 241 Wis. 2d 804, 623 N.W.2d 751 (citation omitted).

## DISCUSSION

### Medical Negligence

¶ 11. Preston asserts two theories explaining why she did not need an expert medical witness. First, she contends that Meriter's failure to treat the child is the kind of matter "within the realm of the ordinary experience of mankind." *Weiss v. United Fire & Cas. Co.,* 197 Wis. 2d 365, 379, 541 N.W.2d 753 (1995) (citation omitted). She argues that the standard of care for treating an infant with her child's gestational age is "within the ready comprehension of lay jurors." Second, she asserts that Meriter's expert witness supports her claim that the child would have had some significant chance of survival.

¶ 12. The trial court dismissed Preston's medical negligence claim because she failed to identify any expert medical witness regarding standard of care or causation. In its written decision, the trial court quoted the portion of Preston's brief that addressed her medical negligence claim:

> Plaintiffs agree that if it were left up to the medical profession alone, many of these very premature infants would be left to die, on grounds of futility of treatment and the use of scarce medical resources to treat such very young and vulnerable patients. It is for that reason that plaintiffs will likely drop their malpractice claim and rely solely on the legal requirements to establish grounds for liability.

¶ 13. We will not address the merits of Preston's arguments either. The record shows that she failed to raise these issues before the trial court. We discern "no reason or excuse for issues, later felt to be material and important, not being presented" to the trial court. *DOR v. Wis. Tel. Co.*, 72 Wis. 2d 259, 267, 240 N.W.2d 411 (1976).

**Informed Consent**

¶ 14. The trial court dismissed Preston's informed consent claim because she did not refute Meriter's *prima facie* defense that it had no independent duty to obtain her informed consent. On appeal, Preston contends that she has a viable argument that Meriter is liable under the doctrine of apparent authority. Meriter asserts that Preston waived this argument by not presenting it to the trial court in summary judgment motions. It concedes that Preston raised the issue of apparent authority at a motion to dismiss, but only in the context of medical negligence.

¶ 15. The record reveals that Preston failed to raise the issue of apparent authority with regard to informed consent in the trial court. We refrain from addressing issues raised for the first time on appeal. *Id.*

## EMTALA Stabilization Requirement

¶ 16. Preston claims that EMTALA § 1395dd(b)(1)(A) required Meriter to stabilize her child's emergency medical condition, regardless of whether Meriter transferred the patient. Both parties contend that Preston's appeal presents an issue of first impression in Wisconsin.[3]

¶ 17. This appeal requires us to interpret EMTALA's necessary care requirements in § 1395dd(b)(1) and apply it to undisputed facts. Statutory interpretation and application presents a question of law which we review de novo. *State ex rel. Frederick v. McCaughtry*, 173 Wis. 2d 222, 225, 496 N.W.2d 177

---

[3] We note, however, that the supreme court discussed how chapter 655 relates to EMTALA in *Burks v. St. Joseph's Hospital*, 227 Wis. 2d 811, 596 N.W.2d 391 (1999). The facts of that case were similar to Preston's facts: a mother sued under EMTALA because a hospital failed to resuscitate her infant child who was about twenty-two weeks old. *Id.* at 813. The majority addressed the issue of whether coverage existed under the Wisconsin Patient's Compensation Fund. *Id.* at 834. It reasoned that the fund only covers malpractice claims and affirmed the trial court's decision that the fund covers some violations of EMTALA. *Id.* at 824, 834. The majority explicitly did not reach the merits of the EMTALA claim. *Id.* at 834. Because *Burks* does not address the merits of the EMTALA claim, we agree with the parties that Preston's appeal is one of first impression in Wisconsin.

(Ct. App. 1992). In construing a statute, our purpose is to discern the legislatures intent and give it effect. *Id.* We first examine the statute's language. *Id.* at 226. If the statute is unambiguous, it is our duty to give the language its ordinary meaning. *Id.*

¶ 18. There are several provisions of EMTALA that are relevant to this appeal. We begin with the stabilization requirement in § 1395dd(b)(1), which provides:

> In general. If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either—
>
> (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
>
> (B) for transfer of the individual to another medical facility in accordance with subsection (c).

Contrary to its ordinary meaning, the term "to stabilize" in § 13955dd(b)(1)(A) has a narrow definition that only applies in connection with the transfer of an emergency room patient. § 1395dd(e)(3)(A); *see Bryant v. Adventist Health System/West*, 289 F.3d 1162, 1167 (9th Cir. 2002). The statute defines the term as:

> to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result or occur during the transfer of the individual from a facility, or, with respect to an emergency medical condition described in paragraph (1)(B), to deliver (including the placenta).

732

§ 1395dd(e)(3)(A). We read these provisions together.

¶ 19. Preston claims that § 1395dd(b)(1)(A) unambiguously requires stabilizing medical treatment in every case, regardless of whether a patient was transferred. She argues that the blended language of § 1395dd(b)(1)(A) and § 1395dd(e)(3)(A) defines the nature of the stabilization requirement, not its boundaries. She asserts that the definition of stabilize "describes the standard of care that applies in stabilizing the patient—not a limitation on the applicable scope of the stabilization requirement."

¶ 20. She finds support for her construction in *In re Baby "K,"* 16 F.3d 590 (4th Cir. 1994). There, the hospital sought declaratory judgment that EMTALA did not require it to provide respiratory support to an anencephalic infant who repeatedly returned to the hospital for care. *Id.* at 593. Preston claims that the Fourth Circuit held that the diagnosis of an "emergency medical condition triggers the duty of the hospital to provide . . . stabilizing treatment or transfer." She argues that this construction requires stabilizing treatment even when a hospital does not transfer the patient.

¶ 21. Meriter claims that the Fourth Circuit has refuted Preston's interpretation of *In re Baby "K"* in *Bryan v. Rectors & Visitors of the University of Virginia*, 95 F.3d 349 (4th Cir. 1996). There, the court recognized EMTALA as an anti-dumping statute, not a federal malpractice statute. *Id.* at 351. It held that "[t]he stabilization requirement is thus defined entirely in connection with a possible transfer and without any reference to the patient's long-term care within the system." *Id.* at 352. With regard to its prior decision, the court clarified that "[t]he holding in *Baby K* thus turned entirely on the substantive nature of the stabilizing

treatment that EMTALA required for a particular emergency medical condition." *Id.*

¶ 22. Preston contends that *Bryan* affirms her interpretation of *In re Baby "K"* because the Fourth Circuit noted that *Bryan* was "fully consistent" with *In re Baby "K".* Meriter, however, argues that other courts interpret *In re Baby "K"* as not addressing whether stabilization liability occurs only with patient transfer. *See Causey v. St. Francis Medical Center*, 719 So. 2d 1072, 1075 (La. Ct. App. 1998) (*Bryan* "backed off the sweeping statement made in the *Baby K* case that EMTALA imposed upon the hospital an obligation not only to admit a patient for treatment of an emergency condition . . . but thereafter to continuously stabilize her condition, no matter how long required."). The Eleventh Circuit addressed the precedential value of *In re Baby "K"*:

> We recognize the Fourth Circuit opinion in *In re Baby "K"* could be interpreted as addressing the contours of the stabilization requirement. Nonetheless, just two years later, in *Bryan* . . . the Fourth Circuit clarified that *Baby "K"* only addressed the issue of whether EMTALA's stabilization requirement mandates treatment of the emergency medical condition presented to the hospital or the general medical condition of the patient. Thus, the Fourth Circuit has held *Baby "K"* did not reach the issue of whether the stabilization requirement only applies in the event of a transfer.

*Harry v. Marchant*, 291 F.3d at 775 n.13 (citation omitted).

¶ 23. We are not persuaded that *In re Baby "K"* remains viable precedent in the Fourth Circuit. Regardless, we consider the Eleventh Circuit's decision in *Harry v. Marchant* to be directly on point. In that case,

734

the court concluded that EMTALA was an anti-dumping statute that unambiguously required a hospital to transfer a patient in order to trigger liability. *Id.* at 771. The court held that "[r]eading the statute in its specifically defined context, it is evident EMTALA mandates stabilization of an individual only in the event of a 'transfer' as defined in EMTALA."[4] *Id.* The context the court referred to is the statutory definition of "to stabilize" in § 1395dd(e)(3)(A), which conditions stabilization of the patient on transfer. The court supported its conclusion by examining legislative history, although it admitted such an inquiry was unnecessary because EMTALA was unambiguous. *Id.* at 772. It reasoned that EMTALA "was not intended to be a federal malpractice statute, but instead was meant to supplement state law solely with regard to the provision of limited medical services to patients in emergency situations." *Id.* at 773.

¶ 24. Preston urges us not to follow *Harry.* She asserts that the doctrine of *expressio unis est exclusio alterius* should control our construction. She argues that "the expression of 'transfer' in (b)(1)(B) ordinarily precludes a construction of (b)(1)(A) that conditions its application on 'transfer.'" She bases this argument on the fact that § 1395dd(b)(1)(A) does not contain the word "transfer." She seems to argue that § 1395dd(b)(1)(A) cannot depend on transfers because § 1395dd(b)(1)(B) explicitly refers to transfers. She argues that this distinction shows the legislature intended a different meaning for § 1395dd(b)(1)(A).

---

[4] Subdivision 1395dd(e)(4) defines, with certain exceptions, transfer as movement "of an individual outside a hospital's facilities at the direction of any person employed by . . . the hospital."

■■

¶ 25. Preston's argument ignores the definition of "to stabilize" in § 1395dd(e)(3)(A). Although "transfer" does not appear in § 1395dd(b)(1)(A), the term "to stabilize" does. As we explained above, the statutory definition of "to stabilize" conditions stabilization on the transfer of a patient. Thus, § 1395dd(b)(1)(A) incorporates "transfer" by reference to "to stabilize." We conclude that the stabilization requirement in EMTALA is unambiguous, as *Harry v. Marchant*, 291 F.3d at 771, also concluded. We do not apply cannons of construction, such as the *exclusio* doctrine, when the language of the statute is unambiguous. *State v. Engler*, 80 Wis. 2d 402, 406, 259 N.W.2d 97 (1977) ("It is impermissible to apply rules of statutory construction to ascertain legislative intent when the legislation is clear on its face.") (citation omitted). By her own argument, Preston admitted the statute is unambiguous.

■■

¶ 26. Finally, Preston contends that the Eleventh Circuit's construction renders § 1395dd(b)(1)(A) unnecessary and redundant because § 1395dd(b)(1)(B) requires stabilization for transferred patients. We agree that we interpret statutes so that no provision is rendered meaningless whenever possible. *Wagner v. Milwaukee Co. Election Comm.*, 2003 WI 103, ¶ 33, 263 Wis. 2d 709, 666 N.W.2d 816. Meriter argues, however, that § 1395dd(b)(1)(A) constitutes the general rule and § 1395dd(b)(1)(B) recognizes an exception to the general rule, specifically defined in § 1395dd(c). Meriter's construction gives effect to all the provisions in § 1395dd and § 1395(e)(3)(A), which defines "to stabi-

lize;" whereas Preston's construction ignores the statutory definition of "to stabilize." We reject Preston's argument.

■■■

¶ 27. We consider *Harry*, 291 F.3d at 771, persuasive. The Eleventh Circuit aptly construed the stabilization requirement in the context of the statutory definition of "to stabilize." *Id.* at 771–73. We adopt the reasoning in *Harry* and hold that EMTALA's stabilization requirement in § 1395dd only pertains to patients the hospital transfers.

■■■

¶ 28. Because Preston has not alleged that Meriter transferred her child, we conclude § 1395dd did not require Meriter to stabilize the patient.

## EMTALA Screening Requirement

¶ 29. Preston asserts that the trial court erred when it construed her complaint as not stating a violation of the screening requirement in § 1395dd(a). The trial court reasoned that:

> Preston's complaint focuses on the hospital's failure to treat/resuscitate [the child] immediately after his birth. This allegation appears to implicate the EMTALA's stabilization requirement and not the screening requirement.

Accordingly, the trial court did not determine whether Meriter had violated the screening requirement.

■■■

¶ 30. We review de novo whether a complaint properly pled a cause of action upon which relief may be granted. *Vogel v. Liberty Mut. Ins. Co.*, 214 Wis. 2d 443, 447, 571 N.W.2d 704 (Ct. App. 1997). We consider the

facts pled true and construe inferences from the pleadings in favor of the party against whom the motion is brought. *Id.* We will affirm the trial courts dismissal only if it appears a certainty that no relief can be granted under any set of facts that Preston could prove to support her allegations. *See Kohlbeck v. Reliance Const. Co.*, 2002 WI App 142, 9, 256 Wis. 2d 235, 647 N.W.2d 277. If the facts as pled "reveal an apparent right to recover under any legal theory, they are sufficient to state a claim." *Id.*

¶ 31. Preston claims the following allegations in her complaint state a violation of the screening requirement:

> Following the birth of the minor child . . . Meriter . . . [was] aware of the birth of the child and aware of his emergent need of medical care, but failed, refused, and neglected to provide any care whatsoever to the newborn infant . . . .
>
> . . . .
>
> The conduct of . . . Meriter . . . was in violation of 42 U.S.C. § 1395dd.

Because § 1395dd encompasses both the screening and stabilization requirement, Preston argues that her complaint satisfies the general notice required to state a claim.

¶ 32. We liberally construe pleadings, sustaining them if they give reasonable notice to the responding party as to the nature of the claim. *Farrell v. John Deere Co.*, 151 Wis. 2d 45, 56, 443 N.W.2d 50 (Ct. App. 1989). We conclude that the factual part of Preston's complaint states a claim that Meriter violated the screening requirement.

738

¶ 33. Therefore, we apply § 1395dd(a) to the undisputed facts of this case, a question of law, which we review de novo. *State ex rel. Frederick*, 173 Wis. 2d at 225.

¶ 34. Section 1395dd(a) provides:

> **Medical screening requirement.** In the case of a hospital that has a hospital emergency department, if any individual . . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . . to determine whether or not an emergency medical condition . . . exists.

¶ 35. Preston argues that Meriter did not provide her child an appropriate medical screening examination to determine whether an emergency medical condition existed. She also claims Meriter did not screen the infant child or herself "to determine whether to transfer them to another hospital that would treat [her child] after birth, to determine whether there was time to transfer before delivery, or to determine whether transfer would 'pose a threat.' "

¶ 36. While Meriter conceded that an emergency medical condition existed, it asserts that the screening requirement only applies to patients in the emergency department. It claims that EMTALA does not apply to inpatients like Preston and the child. The trial court found that Preston failed to refute Meriter's claim that she and her child were inpatients.

¶ 37. We agree that EMTALA only obligates hospitals to screen individuals who present an emergency condition to the emergency department. We find per-

suasive the First Circuit's interpretation of § 1395dd(a) in *Lopez-Soto v. Hawayek, M.D.*, 175 F.3d 170 (1st Cir. 1999). In that case, a woman gave birth to a child who had severe respiratory problems. *Id.* at 171. The child presented an emergency medical condition; however, the child entered the hospital through the operating room, not the emergency department. *Id.* The First Circuit held that the screening requirement only applies to patients who present emergency conditions to the emergency department. *Id.* at 173. It compared the language of § 1395dd(a) and § 1395dd(b). *Id.* Subsection (b) applies to an individual who "comes to the hospital"; whereas, subsection (a) applies to an individual who "come[s] to the emergency department." *Id.* It reasoned that if "comes to the emergency department" were synonymous with "comes to the hospital," then the distinction plainly intended by the difference in the language would not be given effect. *Id.* We avoid rendering statutory provisions meaningless. *Wagner v. Milwaukee Co. Election Comm.*, 2003 WI 103, ¶ 33.

¶ 38. Preston contends that the Department of Health and Human Services recently clarified the "comes to the emergency room"[5] requirement. She urges us to comport our construction of § 1395dd(a) with the department's new rule. She concedes, however, that the rule was "issued after the events of this case and . . . only applies prospectively." We will only hold

---

[5] On September 9, 2003, the Department of Health and Human Services expanded "what is generally thought of as a hospital's 'emergency room' . . . [to] include other departments of hospitals, such as labor and delivery departments . . . or other departments that are held out to the public as an appropriate place to come for medical services on an urgent, nonappointment basis." 68 Fed. Reg. 53222,53228 (Sept. 9, 2003).

Meriter responsible for the plain language of § 1395dd(a) and not subsequent revisions of that rule.

¶ 39. Because Preston's child entered Meriter via the birthing center and not the emergency room, § 1395dd(a) does not impose a screening requirement on Meriter.

## CONCLUSION

¶ 40. Preston waived her medical negligence and informed consent claims by not raising the issues she presents to us in the trial court. We conclude that § 1395dd(b)(1)(a) did not require Meriter to stabilize Preston or her child because neither patient was transferred. We also conclude that as of the time of the events in this case, § 1395dd(a) only imposed a screening requirement when patients present an emergency medical condition in the emergency department.

*By the Court.*—Judgment affirmed.