VILLAGE OF THIENSVILLE, a Wisconsin
municipal corporation, Petitioner-Appellant,

v.

DEPARTMENT OF NATURAL RESOURCES,
Respondent.

Court of Appeals

*No. 85–0203. Argued December 3, 1985 and December 19,
1985.—Decided March 19, 1986.*

(Also reported in 386 N.W.2d 519.)

For the petitioner-appellant, the cause was submitted on the briefs of *Robert L. Feind, Jr.,* Village Attorney, *Houseman, Feind & Castner* of Grafton and oral argument by *Robert L. Feind, Jr.* and *John M. Gallo.*

For the respondent, the cause was submitted on the brief of *Bronson C. La Follette,* Attorney General and *Maryann Sumi,* Assistant Attorney General, and oral argument of *Maryann Sumi.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.   The Village of Thiensville (Thiensville) appeals from an order affirming a hearing examiner's order which, by the same decree, affirmed a permit modification of the Department of Natural

Resources (DNR). The appeal concerns sec. 147.20, Stats., which allows persons to seek review of any DNR order that modifies an original permit. Thiensville claims that this statute also allows review of the original permit as a whole, not just the modification. We conclude that the hearing examiner properly limited his inquiry and that while timely challenges to permit modifications are governed by sec. 147.20, collateral challenges to unmodified portions of the original permit are governed by sec. 147.03, Stats. Accordingly, we affirm the order of the circuit court.

On December 31, 1977, Thiensville was issued a pollutant discharge permit by the DNR allowing Thiensville to operate its sewage treatment plant but requiring construction of an interceptor sewer to connect to the Milwaukee Metropolitan Sewage District. This permit had an expiration date of October 31, 1981.

In early 1981, it became evident that the compliance dates of this permit could not be met. The DNR proposed to modify those compliance dates and held a hearing to that end on July 27, 1981. A modified permit was issued on October 15, 1981, which extended the expiration date to December 31, 1982 and revised the schedule of compliance. Thiensville objected to the new expiration date, the new construction deadlines in the schedule of compliance, and the requirement that Thiensville abandon its sewage plant as of June 30, 1983, including the reasonableness and necessity of the construction of the interceptor sewer.

The hearing examiner granted in part DNR's motion to dismiss, functionally limiting his review to the question of the reasonableness of the new compliance dates as of the date of the issuance of the modified per-

mit. The hearing examiner found the new compliance dates to be reasonable.

Thiensville appealed to the circuit court, which affirmed the hearing examiner's determination. Thiensville now appeals to this court.

We first address Thiensville's argument that the hearing examiner erred in refusing to consider terms of the original permit which were not changed by the modified permit. Thiensville contends that sec. 147.20, Stats., allows such review. We disagree.

Section 147.20(1), Stats., reads in part as follows:

> *Any permit applicant,* permittee, affected state or 5 or more persons *may secure a review by the department of any permit denial, modification, suspension or revocation, the reasonableness of or necessity for any term or condition of any issued or modified permit,* any proposed thermal effluent limitation established under s. 147.05(4) or any proposed water quality related limitation established under s. 147.05(1). [Emphasis added.]

Thiensville focuses upon the emphasized language in its argument that a timely review of a modified permit reopens for consideration those unmodified portions of the permit upon which the time for review has passed.

We begin by holding the provision ambiguous with respect to the question of what may be reviewed under sec. 147.20(1), Stats. The test of statutory ambiguity is whether the statute is capable of being construed in two different ways by reasonably well-informed people. *Kollasch v. Adamany,* 104 Wis. 2d 552, 561, 313 N.W.2d 47, 51–52 (1981). Here, there is ambiguity whether the statute opens the door to review of unmodified, as well as modified, portions of a modified permit. However,

we do not agree with Thiensville's interpretation that it does; there are three reasons for rejecting its interpretation.

First, were we to accept Thiensville's reading of the statute, the statutory language specifying the examination of the reasonableness or necessity of any term or condition of "any issued or modified permit" would be rendered superfluous, in that the statute would only then need to specify "any permit" if it intended to allow the reopening of all terms, even those evidently foreclosed by the passage of the sixty-day time limit of sec. 147.20(1)(a), Stats. In statutory construction, meaning should be given to every word, clause and sentence in the statute, and a construction which would make part of the statute superfluous should be avoided whenever possible. *Kollasch* at 563, 313 N.W.2d at 52.

Second, there is a separate statutory provision accommodating review of a permit otherwise untimely under sec. 147.20, Stats. Section 147.03(2)(b), Stats., provides as follows:

> Whenever, on the basis of any information available to it, the department finds that there is cause for modifying, suspending or revoking a permit, in whole or in part, the department shall notify the permittee by certified mail or personal service of its intention to modify, suspend, or revoke the permit, in whole or in part. Such notice shall specify the information upon which the department relies, and if the department intends to modify the permit, shall explain the modifications which the department intends to make in the permit.

This provision allows the DNR to reexamine part or all of a permit without regard to its date of issuance or

modification. True, the statute leaves the reconsideration within the DNR's discretion; nevertheless, a refusal by the DNR would itself be reviewable under sec. 227.064, Stats. We note that this remedy is evidently still available to Thiensville.

Third, we believe that the policy promoted by our interpretation is sound and in keeping with the exhaustion of remedies doctrine long at the core of administrative law. Under Thiensville's interpretation, a permit modification would enable a petitioner to open all other matters in the original petition to open all other matters in the original petition for review. Functionally, this would result in a hearing examiner from the Department of Administration[1] reviewing permit terms which might well be years old and which might never have been timely challenged at the basic DNR level. Even if, as here, there arguably have been changed circumstances since the granting of the terms of the permit, it is more appropriate for that initial reconsideration to be made by the DNR, rather than by the Division of Hearings and Appeals.

We further observe that administrative agencies are designed to provide uniformity and consistency in the fields of their specialized knowledge. The expertise that comes with experience, and also the fact-finding facility that comes with a more flexible procedure, enable the agencies to perform a valuable public function. When an issue arises that fits squarely within the very area for which the agency was created, it would be logical to require prior administrative recourse before pro-

---

[1] The hearing examiner identified himself at the hearing as being from "the Division of Natural Resources Hearings of the Department of Administration;" the caption on his order read "Division of Hearings and Appeals."

ceeding to court. *Wisconsin Collectors Association, Inc. v. Thorp Finance Corp.,* 32 Wis. 2d 36, 44, 145 N.W.2d 33, 36 (1966).[2] We are persuaded that the doctrine is as apt when applied to different administrative agencies as it is in its conventional usage—an agency versus a reviewing court. We believe the spirit of the exhaustion of remedies doctrine is served by allowing the agency with the expertise and experience to retain the right of first review. *See Beal v. First Federal Savings & Loan Association,* 90 Wis. 2d 171, 198, 279 N.W.2d 693, 705 (1979).

We conclude, then, that sec. 147.20(1), Stats., provides for review of those permit terms or modifications which are timely raised under sec. 147.20(1)(a). Consequently, we affirm the trial court's determination upholding the hearing examiner's decision to so limit his review.

Thiensville further argues that the hearing examiner erred in refusing to extend his inquiry to matters occurring after the permit modification.[3] Its argument is that the review of sec. 147.20(1)(b), Stats., which states that the "department shall consider anew all matters concerning the permit denial, modification, suspension or revocation" allows the hearing examiner

---

[2] Technically, the doctrine propounded in *Wisconsin Collectors Ass'n.,* 32 Wis. 2d at 44, 145 N.W.2d at 36, is the primary jurisdiction doctrine, not the exhaustion of remedies doctrine. These doctrines differ only in whether the action had begun in the agency or not. *See Nodell Inv. Corp. v. City of Glendale,* 78 Wis. 2d 416, 427 n.13, 254 N.W.2d 310, 316–17 (1977). They have developed into "complementary parts of a general principle . . ." however. *Id.*

[3] Thiensville raises other facets of this argument which are disposed of by our resolution of its first issue.

to examine events subsequent to the agency action. We disagree.

We are persuaded that the statute is unambiguous on this point. When statutory language is unambiguous, the intention of the legislature must be arrived at by giving the statutory language its ordinary and accepted meaning. *State v. Burkman,* 96 Wis. 2d 630, 641, 292 N.W.2d 641, 646 (1980). The ordinary and common meaning of a word may be established by its definition in a recognized dictionary. *In re Estate of Haese,* 80 Wis. 2d 285, 291, 259 N.W.2d 54, 56 (1977).

We are persuaded that sec. 147.20, Stats., by its terms ordains a review. Implicit in the concept of "review" is the notion of a second look at something. Black's Law Dictionary 1186 (5th ed. 1979), defines it as follows: "To re-examine judicially or administratively. A reconsideration; second view or examination; revision; consideration for purposes of correction." Similarly, Webster's Third New International Dictionary 1944 (1976), defines it as a "judicial reexamination (as of the proceedings of a lower tribunal by a higher) ...." Both definitions envision a process repetitive of an earlier process, rather than a process which breaks new ground in terms of its scope. We conclude that the clear meaning of the review set forth in sec. 147.20, Stats., requires the hearing examiner to limit his review, as he did here, to events which had been considered by the agency. Those he may "consider anew," but he may not examine what the agency had no opportunity to examine. We note in closing that our earlier discussion of

judicial economy and exhaustion of remedies is equally applicable here.

*By the Court.*—Order affirmed.