RUSK COUNTY CITIZEN ACTION GROUP, INC., Petitioner-Respondent, †

v.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES, Respondent-Appellant.

Court of Appeals

*No. 95–3125. Submitted on briefs May 14, 1996.—Decided June 11, 1996.*

(Also reported in 552 N.W.2d 110.)

†Petition to review denied.

1

For the respondent-appellant the cause was submitted on the brief of *James E. Doyle*, attorney general, and *John S. Greene*, assistant attorney general.

For the petitioner-respondent the cause was submitted on the brief of *Catherine R. Quiggle* of *Rodli, Beskar, Boles & Krueger, S.C.* of River Falls.

Amicus curiae brief was filed by *Steven T. Zobbi* of Minneapolis, for Wolf River Alliance and Wolf River Territories.

Amicus curiae brief was filed by *Anthony S. Earl, Waltraud A. Arts* and *Sarah E. Coyne* of *Quarles & Brady* of Madison for Wisconsin Manufacturers & Commerce.

Amicus curiae brief was filed by *Lawrence Classen* of Madison, for Wisconsin's Environmental Decade, Inc.

Before Cane, P.J., Myse and Wedemeyer, JJ.

MYSE, J. The Wisconsin Department of Natural Resources appeals a judgment reversing the DNR's decision that it lacked authority to promulgate a rule banning sulfide mineral mining in Wisconsin as requested in a petition filed by Rusk County Citizen Action Group, Inc. (RCCAG). Because we conclude that the DNR does not have the authority to promulgate a rule banning all sulfide mineral mining in Wisconsin, we reverse the judgment.

4

RCCAG presented a petition to the DNR pursuant to § 227.12, STATS., requesting that the DNR "promulgate rules that ban the mining of sulfide mineral deposits in the state of Wisconsin." In support of its petition, RCCAG submitted signatures of citizens supporting the mining ban and materials suggesting that it is impossible to operate a sulfide mineral mine without causing serious environmental harm. The DNR denied the petition on the ground that the legislature did not grant the DNR authority to issue a blanket rule banning sulfide mineral mining.

RCCAG sought circuit court review of the DNR's decision. After receiving briefs and hearing oral arguments, the circuit court held that the DNR has authority to issue such a rule and remanded the matter back to the DNR for consideration of the merits of RCCAG's petition. The DNR appeals.

First, we note that there is little dispute that historically sulfide mineral mining operations have caused significant environmental problems. The wisdom of the requested rule banning sulfide mineral mining, however, is not the issue before us. The issue before us is whether the legislature empowered the DNR to issue a rule that would ban all sulfide mineral mining in Wisconsin. The wisdom of a ban on sulfide mineral mining in Wisconsin is a matter of public policy that must be resolved by the legislature and the administrative agencies it charges with this responsibility, not the courts of this state. We therefore are required to resolve this issue without regard to the merits of the proposed rule.

■

On appeal, we review the decision of the DNR, not the trial court. *See La Crosse v. DNR*, 120 Wis. 2d 168, 179, 353 N.W.2d 68, 73 (Ct. App. 1984). Our scope of

review is identical to that of the trial court. *Id.* The extent of the DNR's statutory authority is a question of law. *See Wisconsin Power & Light Co. v. PSC*, 181 Wis. 2d 385, 392, 511 N.W.2d 291, 293 (1994). We give no deference to the agency's decision regarding its own statutory authority. *Id.*

"An administrative agency has only those powers which are expressly conferred or can be fairly implied from the statutes under which it operates." *Oneida County v. Converse*, 180 Wis. 2d 120, 125, 508 N.W.2d 416, 418 (1993). The statutes do not expressly authorize the DNR to ban all sulfide mineral mining in Wisconsin. Therefore, we must determine whether the power to ban sulfide mineral mining is implied from the language of the statutes. "Any reasonable doubt as to the existence of an implied power in an agency should be resolved against the exercise of such authority." *Kimberly-Clark Corp. v. PSC*, 110 Wis. 2d 455, 462, 329 N.W.2d 143, 146 (1983).

The Metallic Mining Reclamation Act (Mining Act), §§ 144.80 through 144.94, STATS., delineates the DNR's authority regarding metallic mineral mining. The Mining Act authorizes metallic mineral mining within certain limitations, and it is undisputed that sulfide mineral mining is one type of metallic mineral mining. Section 144.83, STATS., entitled Department powers and duties, provides in relevant part:

(1) The department shall:

(a) *Adopt rules*, including rules for prehearing discovery, *implementing and consistent with ss. 144.80 to 144.94.*

. . . .

(2) (a) The department by rule after consulting with the metallic mining council *shall adopt mini-*

6

*mum standards for exploration, prospecting, mining and reclamation to ensure that such activities in this state will be conducted in a manner consistent with the purposes and intent of ss. 144.80 to 144.94.* The minimum standards may classify exploration, prospecting and mining activities according to type of minerals involved and stage of progression in the operation.

(b) Minimum standards for exploration, prospecting and mining shall include the following:

. . . .

11. Identification and prevention of pollution as defined in s. 144.01(10) resulting from leaching of waste materials.

12. Identification and prevention of significant environmental pollution as defined in s. 144.01(3).

. . . .

(d) The minimum standards adopted under this subsection shall also provide that if any of the following situations may reasonably be expected to occur during or subsequent to prospecting or mining, the prospecting or mining permit shall be denied[.] (Emphasis added.)

In addition, § 144.85, STATS., sets up a comprehensive permit application process for metallic mineral mining in Wisconsin, and § 144.836, STATS., provides for hearings on applications for mining permits. Section 144.85(5)(a) states that after a public hearing, "the department shall issue the mining permit" if it finds that certain conditions have been met.

Section 144.83(1)(a), STATS., requires the DNR to adopt rules consistent with the Mining Act. However, because the Mining Act sets up a comprehensive permit application process and requires the DNR to adopt minimum standards for exploration, prospecting, min-

7

ing and reclamation to insure that the purposes and intent of the Mining Act are met, we conclude that the Mining Act does not give the DNR authority to issue a rule banning all sulfide mineral mining.

The Mining Act directs the DNR to establish standards and to administer a permit application process in such a way as to insure the standards are met. Adopting standards for a permit application process is inconsistent with imposing a ban on all sulfide mineral mining. A standard is defined as "something that is set up and established by authority as a rule for the measure of quantity, weight, extent, value or quality[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2223 (Unabr. 1976). In contrast to a standard, a ban precludes any comparison or measurement by prohibiting the activity altogether. A ban is inconsistent with the case-by-case analysis based on standards envisioned by the Mining Act because a ban precludes any such analysis. If the legislature had concluded that the DNR should have the authority to ban mining, it could have specifically authorized such a ban. However, the Mining Act envisions a case-by-case analysis of each mining permit application. Because a rule banning sulfide mineral mining would be inconsistent with the Mining Act, we conclude that the Mining Act does not give the DNR the authority to issue a rule banning all sulfide mineral mining in Wisconsin.

RCCAG contends that because the DNR has the authority to control sulfide mineral mining through its standards and the permit process, it has the authority to promulgate a rule banning sulfide mineral mining. We disagree. The DNR's authority to control sulfide mineral mining is not absolute; the DNR's authority is given under specific conditions and mandated proce-

dures for a case-by-case analysis of each mining permit application. As previously discussed, a total ban on sulfide mineral mining would be inconsistent with the case-by-case analysis required by the Mining Act.

Next, RCCAG contends that § 144.82, STATS., authorizes the DNR to ban sulfide mineral mining. Section 144.82 states that "[t]he department shall serve as the central unit of state government to ensure that the air, lands, waters, plants, fish and wildlife affected by prospecting or mining in this state will receive the greatest practicable degree of protection and reclamation." We conclude that § 144.82 is only a statement of purpose and not a grant of authority to issue a ban on mining activity. This section does not expressly give the DNR any authority; it only states that the DNR shall serve as the central unit of state government. Section 144.83, STATS., deals with the powers of the DNR under the Mining Act and we have already determined that it does not give the DNR the authority to impose a ban on sulfide mineral mining. The purpose stated in § 144.82 is consistent with the case-by-case analysis envisioned by the Mining Act.

RCCAG next contends the circuit court correctly concluded that § 144.025, STATS., in the Water and Sewage subchapter, gives the DNR authority to promulgate a rule banning all sulfide mineral mining in Wisconsin. We disagree. Section 144.025(2)(a) provides that the DNR shall have general supervision and control over the waters of the state and shall carry out the planning, management and regulatory programs necessary for implementing the policy and purpose of this chapter. Section 144.025(2)(b) requires the DNR to promulgate rules setting standards of water quality to be

9

applicable to the waters of the state. While § 144.025 gives the DNR responsibility for the water quality in Wisconsin, we conclude that the power granted is not so sweeping as to authorize the DNR to ban all activities that might adversely affect water quality. Section 144.025 does not authorize the DNR to establish limitations for any one specific industry. For example, it would not be suggested that the DNR could ban all industrial activity which adversely affects water quality under § 144.025. We conclude that the circuit court read the authority of the DNR granted under § 144.025 far more broadly than the statutory language itself warrants. While we agree that the DNR does have a responsibility as to the quality of Wisconsin water, we do not find authorization within the terms of § 144.025 to ban all activities that may adversely affect water quality.

Even if we were to assume such a grant of authority may be implied in § 144.025, STATS., we must use rules of statutory construction to resolve the apparent conflict between the power found by the circuit court in § 144.025 and the specific grant of authority in the Mining Act which envisions the issuance of mining permits upon the meeting of certain conditions. The Mining Act is the more specific statutory grant of authority dealing with the question of sulfide mineral mining and it was enacted eight years after § 144.025. When a specific grant of authority to an agency conflicts with a more general grant of authority, the specific statute controls. *Grogan v. PSC*, 109 Wis. 2d 75, 81, 325 N.W.2d 82, 85 (Ct. App. 1982). This is especially true when the specific statute is enacted after the general statute. *Id.* Accordingly, we conclude that the Mining Act, which envisions a permit application pro-

cess and case-by-case analysis, controls over any implied authority of § 144.025 regarding a ban on sulfide mineral mining.

We note that § 144.937, STATS., provides that if there is a standard under another statute which specifically regulates an activity also regulated under the Mining Act, the other statute controls. However, this section does not change our analysis. Section 144.025, STATS., does not specifically regulate sulfide mineral mining; it specifically regulates water quality in Wisconsin. Thus, the water quality standards set up by § 144.025 would control over the water quality standards in the Mining Act. Therefore, we conclude that under § 144.937, the water quality standards of § 144.025 may be relevant to the standards and permit process in the Mining Act, but do not affect the DNR's authority to ban sulfide mineral mining in Wisconsin.

Finally, we address RCCAG's contention that its petition does not ask the DNR to adopt an outright ban of sulfide mineral mining. RCCAG contends that their petition could also be read to request the DNR to adopt standards for reclamation or pollution prevention that would have the effect of banning sulfide mineral mining. We disagree. The petition specifically requests that the DNR "promulgate rules that ban the mining of sulfide mineral deposits in the state of Wisconsin." While the petition does not suggest the specific language of the rule, it identifies a total ban on all sulfide mineral mining. The petition does not request the DNR to strengthen its standards relating to reclamation or pollution control. Nowhere in the petition is it suggested that a modification of the permit application process is being sought, or that the mining of sulfide minerals would be permitted upon meeting standards imposed by the DNR. Section 227.12(2)(a), STATS.,

requires a petition for rule making to "state clearly and concisely . . . [t]he substance or nature of the rule making requested." Therefore, we conclude that the clear and unambiguous language of the petition requested an absolute ban on sulfide mineral mining in Wisconsin. Because we conclude that the DNR does not have the authority to issue a rule banning sulfide mineral mining in Wisconsin, we reverse the judgment.

*By the Court.*—Judgment reversed.