Curt ANDERSEN, John Hermanson,
Rebecca Leighton Katers, Christine Fossen
Rades, Thomas Sydow, National Wildlife
Federation and Clean Water Action Council of
Northeastern Wisconsin, Inc.,
Petitioners-Appellants,

v.

DEPARTMENT OF NATURAL RESOURCES,
Respondent-Respondent.†

Court of Appeals

*No. 2008AP3235. Submitted on briefs December 10, 2009.
—Decided April 13, 2010.*

2010 WI App 64

(Also reported in 783 N.W.2d 877.)

---

† Petition to Review granted 7/22/10.

---

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Elizabeth R. Lawton* of *Midwest Environmental Advocates, Inc.*, Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Joanne F. Kloppenburg*, assistant attorney general.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. BRUNNER, J. Curt Andersen, John Hermanson, Rebecca Leighton Katers, Christine Fossen Rades, Thomas Sydow, National Wildlife Federation and Clean Water Action Council of Northeastern Wisconsin, Inc. (collectively, the Council) appeal a judgment affirming a Department of Natural Resources (DNR) decision denying a hearing on a majority of their objections to a state-issued wastewater discharge permit. The Council claims the DNR and circuit court (1) incorrectly interpreted WIS. STAT. § 283.63[1] to require that contested issues be raised during the public comment period to preserve them for consideration during later proceedings; and (2) improperly concluded the DNR lacks authority to determine whether the permit violates federal law. We agree with both contentions and remand for a public hearing on the Council's objections, to be conducted in accordance with the procedures set forth in § 283.63.

## BACKGROUND

¶ 2. On May 27, 2005, the DNR issued a public notice of its intent to reissue a Wisconsin Pollutant Discharge Elimination System (WPDES) permit to Fort James Operating Company in Green Bay. A copy of the proposed permit accompanied the public notice. In lieu

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

of limiting mercury discharges, the proposed permit required mercury sampling under an alternative limitation plan authorized by WIS. ADMIN. CODE § NR 106.145 (May 2005). The proposed permit also included a phosphorus effluent limitation, compliance with which was to be determined as a rolling twelve-month average. The DNR instructed interested citizens to submit written comments or request a public hearing on the proposed permit within thirty days.[2]

¶ 3. The Council objected to the proposed phosphorus limitations. It claimed the DNR failed to conduct a "reasonable potential analysis" required by federal law to determine the impact of additional phosphorus discharges on water quality.[3] The comment also alleged state rules permitting expression of phosphorus effluent limitations as a rolling twelve-month average violated federal law. Finally, the Council claimed the DNR violated state law by failing to perform an anti-degradation analysis. The Council did not contest the permit terms governing mercury sampling.

---

[2] WISCONSIN STAT. § 283.39(2) mandates the DNR "provide a period of not less than 30 days following the date of the public notice during which time interested persons may submit their written views on the tentative determinations with respect to the permit application." WISCONSIN STAT. § 283.49(1)(a) requires the DNR to "provide an opportunity for . . . any interested . . . person or group of persons to request a public hearing with respect to a permit application."

[3] According to the Council, the proposed permit increased the total volume of wastewater discharged by 19%. The Council noted, "While the 1.0 mg/l effluent limitation for phosphorus has not changed, an increase in volume without a corresponding decrease in concentration results in an increase in the pollutant load."

¶ 4. On August 24, 2005, the DNR issued a final decision on the permit. It determined none of the Council's objections merited further action.[4] The permit was reissued without substantive changes.

¶ 5. The Council petitioned the DNR for review pursuant to WIS. STAT. § 283.63(1) and requested a public hearing.[5] The Council renewed its earlier assertions and raised new objections, including that the permit required mercury sampling too infrequently and that a reasonable potential analysis was also required for mercury discharges.

---

[4] The DNR agreed the "mass loading of phosphorus discharged to the Fox River increased from an average of 42.6 pounds per day to 69.9 [pounds] per day," but concluded a reasonable potential analysis—which would determine whether phosphorus discharges exceeded water quality standards—could not be performed "due to the lack of water quality criteria for phosphorus." The DNR also rejected the Council's contention that federal law required expression of phosphorus limits as average monthly and maximum daily values, concluding that doing so would be impracticable because state law did not require it. Finally, the DNR concluded its obligation to conduct an anti-degradation analysis was not triggered because the increased phosphorus discharge did not exceed permit limits.

[5] WISCONSIN STAT. § 283.63(1) allows

[a]ny . . . 5 or more persons [to] secure a review by [the DNR] of any permit denial, modification, suspension or revocation, the reasonableness of or necessity for any term or condition of any issued, reissued or modified permit, any proposed thermal effluent limitation established under s. 283.17 or any water quality based effluent limitation established under s. 283.13(5).

After receiving a verified petition, § 283.63(1)(b) obligates the DNR to hold a public hearing at which the petitioner may present evidence in support of his or her petition. The DNR must issue its decision within ninety days after the close of the hearing. WIS. STAT. § 283.63(1)(d).

¶ 6. The DNR denied the petition in part on March 16, 2006. Interpreting *Village of Thiensville v. DNR*, 130 Wis. 2d 276, 386 N.W.2d 519 (Ct. App. 1986), the DNR determined "that an issue may be raised at a contested case hearing [only] if it had been aired during the public comment period, even if the ultimate petitioners for the contested case hearing were not involved in the discussions." The DNR denied the Council a hearing on its recent objections to the mercury provisions, citing its failure to receive any comments contesting them. However, the DNR concluded the Council adequately preserved its objections to the phosphorus effluent limitations.

¶ 7. The Council was nonetheless denied a public hearing on many of its challenges to permitted phosphorus discharges. The DNR summarily concluded it lacked authority to resolve any challenges based on federal law. Because all the Council's objections to the phosphorus provisions invoked federal law, the DNR's decision effectively denied the Council a hearing on all claims except its assertion that state law required an anti-degradation analysis for phosphorus.

¶ 8. On April 13, 2006, the Council petitioned for judicial review of the DNR's March 16 decision. In addition, the Council requested a judgment declaring the availability of a Wis. Stat. § 283.63 public hearing is not conditioned upon having raised issues during the public comment period. It also sought judgments declaring the DNR was required to comply with federal regulations and invalidating several state administrative code provisions relating to phosphorus and mercury discharges as conflicting with federal law.

¶ 9. The circuit court dismissed the Council's petition and affirmed the DNR's decision. Relying on both its interpretation of statutory language and the exhaus-

tion of administrative remedies doctrine articulated in *Village of Thiensville*, the court concluded any contested issues must be raised during the public comment period. The court also rejected the Council's federal law challenges, reasoning the Environmental Protection Agency (EPA) possessed ultimate authority over the state's issuance of permits, did not object to the permit, and could not be joined as a party.

## DISCUSSION

¶ 10. We have distilled two primary questions from those presented by the Council. The first is whether the DNR's failure to receive submissions disputing the permit's mercury monitoring requirements bars the Council from challenging them in a Wis. Stat. § 283.63 public hearing. The second is whether the DNR correctly limited the scope of the hearing to state law challenges. This question requires us to review the DNR's conclusion that it lacked authority to determine whether state law complies with federal environmental legislation and rules. We consider each issue separately and resolve the remaining contested issues in the final section of this opinion.

## 1. Public Comment as a Prerequisite to a Wis. Stat. § 283.63 Hearing

¶ 11. The circuit court offered two alternative rationales for its conclusion that the allegations contained in a Wis. Stat. § 283.63 petition must first be raised during the public comment period. First, the court emphasized statutory language directing the DNR to "consider anew all matters concerning [the challenged administrative action]." *See* Wis. Stat. § 283.63(1)(b).

Statutory interpretation is a matter of law we review de novo, regardless whether the analysis was conducted by the circuit court, *see State v. Long*, 2009 WI 36, ¶ 20, 317 Wis. 2d 92, 765 N.W.2d 557, or an administrative agency, *see* WIS. STAT. § 227.57(5). The court also applied the exhaustion of administrative remedies doctrine as described in *Village of Thiensville*. Although the standard of review in deciding whether the exhaustion doctrine applies in a particular case is a murky matter, *see Metz v. Veterinary Exam'g Bd.*, 2007 WI App 220, ¶¶ 16–18, 305 Wis. 2d 788, 741 N.W.2d 244, we conduct an independent analysis because this case involves application of well-established exhaustion principles to undisputed facts.

¶ 12. WISCONSIN STAT. § 283.63 provides individuals aggrieved by a wastewater discharge permit one of the few opportunities to challenge the permit after its issuance.[6] Within sixty days of the DNR's action on a permit, "5 or more persons may secure a review by the department of any permit denial, modification, suspension or revocation, [or] the reasonableness of or necessity for any term or condition of any issued, reissued or modified permit . . . ." WIS. STAT. § 283.63(1). Upon receipt of a petition, the DNR must schedule a public hearing at which "the petitioner shall present evidence to the department which is in support of the allegation made in the petition. All interested persons . . . shall be

---

[6] WISCONSIN STAT. § 283.53(2)(b) allows the DNR, on its own initiative, to modify, suspend or revoke a permit whenever it finds cause based on any information available to it. While we have recognized this statute may provide a remedy for those aggrieved by a DNR permit decision but who fail, for whatever reason, to object within the times set forth in WIS. STAT. ch. 283, aggrieved parties have no right to reconsideration under this paragraph. *See Village of Thiensville v. DNR*, 130 Wis. 2d 276, 280–81, 386 N.W.2d 519 (Ct. App. 1986).

afforded an opportunity to present facts, views or arguments relevant to the issues raised by the petitioners, and cross-examination shall be allowed." Wis. Stat. § 283.63(1)(b). The DNR must "consider anew all matters concerning the permit denial, modification, suspension or revocation." *Id.*

¶ 13. The DNR suggests the words "review" and "anew" plainly evince a legislative intent to limit the hearing to matters previously raised but not yet resolved to a commenter's satisfaction through the informal public comment process. The DNR places more weight on these words than they can reasonably bear. "Review," as used in Wis. Stat. § 283.63, does not refer to an issue raised during the public comment period, but to a prior action taken by the DNR—in this case the reissuance of Fort James' permit.[7] "Review" does not limit the § 283.63 hearing to matters previously raised.

¶ 14. Nor does the legislature's use of the word "anew" manifest, as the DNR claims, an unambiguous legislative intent to restrict the scope of a Wis. Stat. § 283.63 hearing. As the Council cogently observes, the legislature replaced the phrase "de novo" with the term "anew" when removing Latin terms from the statutes.

---

[7] The DNR relies on our statement in *Village of Thiensville* that, by its use of the word "review," the legislature "envision[ed] a process repetitive of an earlier process, rather than a process which breaks new ground in terms of its scope." *Village of Thiensville*, 130 Wis. 2d at 283. The DNR fails to note the context of this statement, which was in response to the Village's argument that the hearing examiner erred in refusing to examine events occurring after the permit modification. *Id.* at 282–83. We merely interpreted the statute to require that the validity of the DNR's permitting action, or the reasonableness of a permit provision, must be assessed based upon information or events available to the DNR at the time of its decision.

1979 Wis. Laws, ch. 110, Introduction and § 27. "Anew" therefore refers to the standard of review by which the DNR must analyze its prior action concerning a permit denial, modification, suspension or revocation. *See* Wis. Stat. § 283.63(1)(b). "Anew" does not suggest a limitation upon the DNR's ability to review matters not raised before a final permit issues. Consequently, nothing in § 283.63 expressly limits the hearing to matters considered during public comment.

¶ 15. When interpreting a statute, the context in which it appears is important. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. The legislature's desire to achieve significant public participation in the permit process is evident throughout Wis. Stat. ch. 283. Wisconsin Stat. § 283.39 requires the DNR to give public notice of "each complete application for a permit." Moreover, "[t]he department shall provide a period of not less than 30 days following the date of the public notice during which time interested persons may submit their written views" on a permit application. Wis. Stat. § 283.39(2). Wisconsin Stat. § 283.43 mandates public access to forms, fact sheets, draft permits and other public documents, and Wis. Stat. § 283.49 allows any interested person to request a public hearing on the application. To the extent it would penalize members of the public for their failure to participate earlier in the process, the DNR's suggestion that the permit scheme contemplates a progressive narrowing of issues is inconsistent with the legislature's goal of encouraging public involvement.

¶ 16. The DNR has implicitly recognized this legislative goal in regulations facilitating public participation. Public notice of a completed permit application "is

intended to inform interested and potentially interested members of the public of a completed application, [the DNR's] tentative determination to issue or deny the permit ... and the public's right to obtain additional information, submit written comments, or request a public hearing." WIS. ADMIN. CODE § NR 203.02(1) (Nov. 1996). Public informational hearings are intended "to give all interested persons an additional opportunity to make a statement with respect to a proposed permit ... and to have such statement considered in the final determination." WIS. ADMIN. CODE § NR 203.04 (Nov. 1996). Even the DNR's statement of intent with respect to WIS. STAT. § 283.63 hearings reflects a desire for public involvement: "The purpose of this subchapter is to provide adequate procedures to insure as broad a degree of public participation in administrative adjudication of WPDES permits and their conditions as is consistent with procedural due process to the parties involved in the proceeding." WIS. ADMIN. CODE § NR 203.14 (Nov. 1996). These provisions demonstrate an intent to encourage public participation, not to progressively limit it.

¶ 17. The DNR argues our decision in *Village of Thiensville* requires that we accept its interpretation of WIS. STAT. § 283.63. In that case, we considered the scope of review in a § 283.63 hearing where the DNR modified portions of a permit based on events occurring after it was issued. *Village of Thiensville*, 130 Wis. 2d at 278. Although the opportunity to timely challenge the unmodified portions of the permit had long passed, the Village of Thiensville claimed § 283.63's predecessor statute, WIS. STAT. § 147.20 (1985–86), allowed review of the original permit as a whole, not just its modifications. *Id.* at 278–79. A hearing examiner from the Department of Administration's Division of Hearings

and Appeals concluded only review of the modified permit terms was appropriate and found them reasonable. *Id.* The issue before this court was whether the hearing examiner erred by refusing to review unaltered terms of the original permit. *Id.* at 279.

¶ 18. In *Village of Thiensville*, we held Wis. Stat. § 147.20(1) (1985–86), barred review and concluded the statute did not "[open] the door to review of unmodified, as well as modified, portions of a modified permit." *Id.* We rejected the Village's argument that "a timely review of a modified permit reopens for consideration those unmodified portions of the permit upon which the time for review has passed." *See id.* While we offered several reasons for this conclusion, the DNR argues only our discussion of the exhaustion of administrative remedies doctrine controls here.[8]

■■

¶ 19. "The exhaustion doctrine is typically applied when a party seeks judicial intervention before completing all the steps in the administrative process." *Metz*, 305 Wis. 2d 788, ¶ 13. It is a doctrine of judicial restraint, drawn by the legislature and the courts, setting the boundary line between administrative and judicial spheres of activity. *Nodell Invest. Corp. v. City of Glendale*, 78 Wis. 2d 416, 424, 254 N.W.2d 310 (1977). Although classic application of the doctrine occurs when a party begins judicial proceedings before completing previously initiated administrative action, *see Metz*, 305 Wis. 2d 788, ¶ 12, in *Village of Thiensville* we

---

[8] Our other rationales concerned the fact that the Village's interpretation would render certain statutory language superfluous and the existence of the DNR's discretionary review authority under Wis. Stat. § 283.53(2)(b). *Village of Thiensville*, 130 Wis. 2d at 280–81.

extended the doctrine to administrative review of an agency decision:

> Functionally, [Thiensville's interpretation] would result in a hearing examiner from the Department of Administration reviewing permit terms which might well be years old and which might never have been timely challenged at the basic DNR level. . . . [I]t is more appropriate for that initial reconsideration to be made by the DNR, rather than by the Division of Hearings and Appeals.
>
> . . . .
>
> We are persuaded that the [administrative exhaustion] doctrine is as apt when applied to different administrative agencies as it is in its conventional usage—an agency versus a reviewing court. We believe the spirit of the exhaustion of remedies doctrine is served by allowing the agency with the expertise and experience to retain the right of first review.

*Village of Thiensville*, 130 Wis. 2d at 281–82 (footnote omitted).

¶ 20. We do not read *Village of Thiensville* as controlling. In that case, the Village attempted to use Wis. Stat. § 283.63 to obtain review of permit terms for which the sixty-day period had long passed. Here, the Council sought review within the sixty-day period.[9] Thus, the Council had no prior opportunity to petition for review of permit terms it considered unreasonable. The DNR apparently believes the Council's prior opportunity came during the public comment period, but nothing in our discussion in *Village of Thiensville* supports this position. In fact, *Village of Thiensville* does not mention the public comment period. As a result, the facts of this case do not implicate our concern in

---

[9] The permit reissued on August 30, 2005. The Council filed its petition on October 28, 2005.

*Village of Thiensville* that the hearing examiner will be "reviewing permit terms which might well be years old and which might never have been timely challenged at the basic DNR level." *See id.* at 281.

¶ 21. That the DNR may initially review a petitioner's claims further undermines its assertion of the administrative exhaustion doctrine. WISCONSIN STAT. § 283.63 identifies the DNR as the reviewing department, not the Division of Hearings and Appeals. The administrator of the division must assign a hearing examiner only if the DNR secretary does not conduct the hearing. WIS. STAT. § 227.43(1)(b). Moreover, the DNR secretary may direct an administrative law judge to conduct the hearing, but certify the record to a DNR official for decision. WIS. STAT. § 227.46(3)(b); WIS. ADMIN. CODE § NR 2.155(2)(a) (Sept. 2004). Because the DNR may initially adjudicate a petitioners claims, our concern in *Village of Thiensville*—that the agency with the expertise and experience should retain the right of first review—appears unfounded outside the specific context of that case.[10]

¶ 22. Neither WIS. STAT. § 283.63's language nor our decision in *Village of Thiensville* supports the DNR's position. The availability of a § 283.63 hearing is not dependent on whether the DNR has received notice

---

[10] The relationship between the DNR and the division of hearings and appeals is more nuanced than *Village of Thiensville* suggests. An agency may contract with the division to provide hearing services. WIS. STAT. § 227.43(1m). Where an administrative law judge presides over a hearing, the judge's decision is, by rule, the final decision of the DNR, unless the DNR petitions for judicial review. WIS. ADMIN. CODE 2.155(1) (Sept. 2004). The DNR may nonetheless review the administrative law judges decision upon petition by an adversely affected party. WIS. ADMIN. CODE NR 2.20(1) (Sept. 2004).

of the petitioner's claims during the public comment period. The DNR and circuit court improperly denied the Council an opportunity to demonstrate the unreasonableness of the permit terms governing mercury discharges.

## 2. DNR's Authority to Determine Whether Proposed Permit Terms Comply with Federal Law

¶ 23. The scope of review in an administrative appeal is identical to that in proceedings before a circuit court. *City of LaCrosse v. DNR*, 120 Wis. 2d 168, 179, 353 N.W.2d 68 (Ct. App. 1984). The Council sought judicial review of the DNR's conclusion that it had no authority to determine whether proposed permit terms, and the regulations upon which they are based, comply with federal law. "The extent of the DNRs statutory authority is a question of law. *Rusk County Citizen Action Group, Inc. v. DNR*, 203 Wis. 2d 1, 6, 552 N.W.2d 110 (Ct. App. 1996). We may substitute our own judgment for that of the agency. WIS. STAT. § 227.57(5). However, our review is limited to the record before the agency. WIS. STAT. § 227.57(1). In addition, we afford due weight to the "experience, technical competence, and specialized knowledge of the [DNR], as well as discretionary authority conferred upon it." WIS. STAT. § 227.57(10).

¶ 24. The DNR claims it lacks authority to determine whether permit conditions established by state regulations comply with federal law. The DNR provided scant justification for its position in its March 16, 2006, decision letter rejecting the Council's hearing petition:

> The sole authority for the [DNR] to administer the WPDES permit program appears in Wis. Stat. chs. 281 and 283, and Wisconsin Administrative Codes adopted pursuant to those authorities. To the extent that a challenge to a WPDES permit term or condition is made pursuant to Wis. Stat. § 283.63, the challenge must be based on Wisconsin law.

The DNR acknowledged in its decision letter that Wis. Stat. ch. 283 directs the DNR to conduct certain activities in accordance with federal law. The DNR makes the same concession on appeal, but argues only the EPA may determine whether permit provisions comply with federal requirements. The DNR's position requires us to analyze the precise balance between federal and state authority struck by federal water pollution legislation.

¶ 25. The Federal Water Pollution Control Act Amendments of 1972, "joined the Environmental Protection Agency and the fifty states in a delicate partnership charged with controlling and eventually eliminating water pollution throughout the United States." *Save the Bay, Inc. v. Administrator of EPA*, 556 F.2d 1282, 1284 (5th Cir. 1977). The Amendments prohibited all pollutant discharges except those made pursuant to permits obtained from the EPA under a National Pollutant Discharge Elimination System (NPDES). Federal Water Pollution Control Act Amendments of 1972, Pub. L. No. 92–500, Sec. 2, §§ 301(a), 402(a)(1), 86 Stat. 844, 880 (codified as amended at 33 U.S.C. §§ 1311(a), 1342(a)(1)). As an initial matter, the EPA is vested with discretion to issue permits. Section 402(a)(1). However, the Amendments also reserved to states the right to establish their own permit program by submitting a proposal to the EPA. Section 402(b). "The state must demonstrate that it will apply the effluent limitations and the Amendments' other requirements in the per-

mits it grants and that it will monitor and enforce the terms of those permits." *Save the Bay, Inc.*, 556 F.2d at 1285. Wisconsin obtained EPA approval for its permit program in 1974 and the DNR has administered the program since that time.

¶ 26. The EPA's involvement in the permit process does not end when its permitting authority is delegated to the state. Section 402(c)(1). The state must submit to the EPA a copy of each application for a state permit. Section 402(d)(1). The EPA then has ninety days to object to the state permit, and may exercise its veto "on the grounds that [the proposed permit terms] are 'outside the guidelines and requirements' of the Amendments." *Save the Bay, Inc.*, 556 F.2d at 1294. Despite the EPA's continuing supervisory role over state permit programs, "[p]ermits granted under state NPDES programs are state-issued permits, not EPA-issued." *Id.* at 1291.

¶ 27. The legislative history of the Amendments makes clear Congress envisioned the EPA would use its veto power judiciously. As the United States Court of Appeals for the Fifth Circuit noted in *Save the Bay, Inc.*, the public works committee expected that "after delegation, the Administrator will withhold his review of proposed permits which are not of major significance." *Id.* at 1286 (quoting S. REP. No. 92–414 (1971), *as reprinted in* 1972 U.S.C.C.A.N. 3668, 3737)). The conference committee on the legislation likewise believed the EPA would "not take such action except upon a clear showing of failure on the part of the State to follow the guidelines or otherwise to comply with the law." *Id.* at 1287 (quoting 118 CONG. REC. 33750 (1972)). As the Fifth Circuit put it, the legislative history suggests "not every permit out of compliance with the guidelines need be vetoed." *Id.* at 1294. The broad discretion given the

EPA led the court to hold the "EPA's decision not to veto a particular permit takes on a breadth that in our judgment renders . . . that decision unreviewable in the federal courts." *Id.* at 1295.

¶ 28. The DNR suggests EPA's failure to object is outcome determinative, at least with respect to the Council's federal law claims. In the DNR's view, "Any permit challenges must be based on state law only, because neither DNR nor the Division of Hearings and Appeals has the authority to overrule the EPA's prior determination that this permit's provisions are not objectionable under federal law." As shown, the EPA's failure to object does not mean it has found no reason to do so. While the lack of objection may indicate the EPA has found no violation of federal law, it may also mean the EPA has found a violation it does not deem substantial enough to warrant a veto, or it may mean the EPA has abdicated its oversight duties altogether. *See* Federal Water Pollution Control Act Amendments of 1972, § 402(d)(3); *Mianus River Pres. Comm. v. Administrator, E.P.A.*, 541 F.2d 899 (2d Cir. 1976). The state's theory would allow the DNR to promulgate rules and issue permits violating federal law as long as it can successfully skirt the EPA's discretionary review. We reject this contention.

¶ 29. An administrative agency has only those powers which are expressly conferred or can be fairly implied from the statutes under which it operates. *Oneida County v. Converse*, 180 Wis. 2d 120, 125, 508 N.W.2d 416 (1993). The DNR has been granted broad authority to manage this state's waters, including an obligation to "formulate plans and programs for the prevention and abatement of water pollution and for the maintenance and improvement of water quality."

WIS. STAT. § 281.12(1). The stated purpose of WIS. STAT. ch. 283 is to "grant to the department of natural resources all authority necessary to establish, administer and maintain a state pollutant discharge elimination system . . . consistent with all the requirements of the federal water pollution control act amendments of 1972 . . . ." WIS. STAT. § 283.001(2). In addition, the legislature has directed that all rules promulgated by the DNR under ch. 283 "shall comply with and not exceed the requirements of the federal water pollution control act . . . and regulations adopted under that act." WIS. STAT. § 283.11(2). The DNR may issue a discharge permit only if "such discharges will meet . . . [a]ny more stringent limitations . . . [n]ecessary to comply with any applicable federal law or regulation[.]" WIS. STAT. § 283.31(3)(d)2. Collectively, these statutes require the DNR to assess whether proposed permit provisions violate federal law. A contrary interpretation would allow the DNR to determine whether rules or permit terms comply with federal law at the time of their creation, but not when challenged. We decline to interpret the statutes in such an illogical fashion.

¶ 30. That the Council's desired review will occur in a state administrative hearing under WIS. STAT. ch. 283 is irrelevant. As the DNR concedes, nothing in WIS. STAT. § 283.63 restricts the scope of the hearing to challenges grounded in state law. The DNR argues, however, that the statutory scheme leading up to this section reserves to the EPA the exclusive right to review a permit for consistency with federal law. The statutory scheme merely requires the DNR to provide the EPA with notice of a proposed permit and prohibits the DNR from issuing any permit the EPA has objected to. *See* WIS. STAT. §§ 283.41(1), (2), 283.31(2)(c). These statutory notice-and-approval sections do no more than that

required by federal law and in no way defer to the EPA the exclusive right to determine state compliance with federal law.

¶ 31. Our conclusion is consistent with case law suggesting state administrative agencies and courts may determine the requirements of, and state compliance with, federal law. In *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 525 N.W.2d 723 (1995), our supreme court held claim preclusion barred the plaintiff's federal claims in a second suit because they could have been, but were not, raised during state administrative proceedings. The court reached the same conclusion in *Sewerage Commission of Milwaukee v. DNR*, 102 Wis. 2d 613, 627–28, 307 N.W.2d 189 (1981), when noting that, had the petitioners timely challenged their permit, the DNR could have determined whether it complied with federal requirements.[11] Finally, the court has acknowledged that state "agencies would become ineffectual if they lost their authority to review a case every time a [federal] constitutional claim was asserted." *Hogan v. Musolf*, 163 Wis. 2d 1, 21–22, 471 N.W.2d 216 (1991). In *Hogan*, the court rejected the plaintiff's attempt to escape application of the administrative exhaustion doctrine, concluding "the Department [of Revenue] and the [Tax Appeals] Commission have the authority to determine whether the continued

---

[11] The DNR makes much of a stipulation in *Sewerage Commission of Milwaukee v. DNR*, 102 Wis. 2d 613, 627–28, 307 N.W.2d 189 (1981), that authorized the state courts to determine the scope of the DNR's authority. The DNR is unclear what significance the absence of such a stipulation has in this case. The stipulation in *Sewerage Commission of Milwaukee* said nothing about the authority of the DNR to determine state compliance with federal law; it merely determined the forum in which that dispute would be litigated.

application of the Wisconsin taxing scheme also violates federal law or the constitution." *Id.* at 21.

¶ 32. The United States Court of Appeals for the Seventh Circuit has also suggested both the DNR and state courts possess authority to measure state regulatory action against the requirements of federal law. In *Froebel v. Meyer*, 217 F.3d 928, 930–32 (7th Cir. 2000), a state resident brought suit against the DNR and Waukesha County in federal court, alleging the DNR's removal of a dam violated state environmental laws. The Seventh Circuit concluded the plaintiff's claims against the DNR were precluded because he previously challenged the dam removal in a series of state proceedings culminating in this court's decision in *Froebel v. DNR*, 217 Wis. 2d 652, 579 N.W.2d 774 (Ct. App. 1998). The Seventh Circuit's analysis included its observation that had the plaintiff "asked the Wisconsin administrative or judicial tribunals to entertain his [federal Clean Water Act] claims, . . . they could have done so." *Froebel*, 217 F.3d at 935. In addition, the court expressed "no doubt that Wisconsin cannot give discretion to its administrative agencies to violate federal law, since such a statute would run contrary to the Supremacy Clause." *Id.* at 936. Thus, the court "presume[d] that Wisconsin officials and courts would have faithfully applied federal standards if [the plaintiff] had given them the chance." *Id.*

¶ 33. We conclude the DNR possesses authority to determine whether provisions within a state-issued wastewater discharge permit comply with federal law. Contrary to the DNR's claims, no authority we have reviewed reserves to the EPA the exclusive right to determine state compliance with federal environmental legislation or rules. Our legislature has directed that all rules promulgated, and permits issued, comply with

849

federal law, and the DNR acts within its statutory authority when determining whether they do so.

## 3. Remaining Contested Issues

¶ 34. Our formulation of the critical issues has left unresolved several arguments raised by the Council, which we now address.

¶ 35. The Council argues the circuit court erroneously dismissed its declaratory judgment action for absence of a necessary party under WIS. STAT. § 803.03. According to the Council's description of its request, it merely sought a declaration that the "DNR must impose effluent limits and conditions in *all* WPDES permits that comply with federal law." The circuit court properly dismissed the action. There is no dispute state law already requires the declaration sought by the Council. *See* WIS. STAT. § 283.31(3)(d)2. (authorizing the DNR to issue a discharge permit upon condition that any discharges "comply with any applicable federal law or regulation"). "[D]eclaratory relief is appropriate wherever it will serve a useful purpose . . . ." *Lister v. Board of Regents*, 72 Wis. 2d 282, 307, 240 N.W.2d 610 (1976). We discern no useful purpose the Councils desired declaratory judgment would serve. We therefore affirm the dismissal, albeit on other grounds. *See State v. King*, 120 Wis. 2d 285, 292, 354 N.W.2d 742 (Ct. App. 1984).

¶ 36. We need not address whether the circuit court properly dismissed the Councils declaratory judgment action challenging the validity of WIS. ADMIN. CODE §§ NR 106.145 and 217.04(1)(a)2. (May 2005). The Council has supplied no argument on appeal regarding the challenged rules validity, and notes in its reply brief

that these declaratory judgment requests "were not pursued and not before the court when it rendered its decision." *See M.C.I., Inc. v. Elbin,* 146 Wis. 2d 239, 244–45, 430 N.W.2d 366 (Ct. App. 1988) (we need not consider undeveloped arguments); *Evjen v. Evjen,* 171 Wis. 2d 677, 688, 492 N.W.2d 361 (Ct. App. 1992) (issues not properly raised are waived on appeal).

¶ 37. We decline to take judicial notice of a February 17, 2009, letter in which the EPA allegedly disapproved portions of WIS. ADMIN. CODE § NR 106.145 (May 2005), as inconsistent with federal law. We agree with the DNR that the letter would have no bearing on whether the DNR properly denied the Council's request for a hearing under state law. The letter would therefore be irrelevant to the resolution of this appeal.

¶ 38. Finally, the Council claims any requirement that it submit objections during public comment to preserve review is an invalid unpromulgated rule for which the DNR failed to follow rulemaking procedures. Because the Council has not responded to the DNR's argument to the contrary, we deem the matter conceded. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.,* 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

## CONCLUSION

¶ 39. We conclude the circuit court incorrectly interpreted WIS. STAT. § 283.63 and hold that the DNR must conduct a public hearing regardless of whether it received comments on the contested matter prior to a final decision on the permit application. We also conclude the DNR has authority to determine whether discharge permit provisions authorized by state regulations comply with federal law. We therefore reverse the

circuit court and remand for entry of an order requiring the DNR to conduct a public hearing in accordance with the procedure set out in § 283.63.

*By the Court.*—Judgment reversed and cause remanded with directions.